PHILADELPHIA RUBBER WORKS CO. v. PORTAGE RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit. March 12, 1917.)

No. 2846.

1. PATENTS ⬤⟳229—INFRINGEMENT—PROCESS PATENTS.

The rule applicable to mechanical patents for combinations also applies to process patents, and unless a defendant uses all the steps in the process, or an equivalent therefor, he does not infringe.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 366, 368.]

2. PATENTS ⬤⟳165—INFRINGEMENT—LIMITATIONS IN CLAIMS.

The patent is the measure of the monopoly, and the public has a right to act in reliance on any clear and expressed limitations contained in the grant, although, if the limitations are voluntary and unnecessary, the tendency of the courts is to interpret them liberally in favor of the patentee.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241.]

3. PATENTS ⬤⟳328—INFRINGEMENT—PROCESS OF DEVULCANIZING RUBBER WASTE.

The Marks patent, No. 635,141, for a process of reclaiming rubber from vulcanized rubber waste, construed, and held not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Suit in equity by the Philadelphia Rubber Works Company against the Portage Rubber Company. Decree for defendant, and complainant appeals. Modified and affirmed.

For opinion below, see 227 Fed. 623.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles Neave, of New York City, for appellant.
F. J. Wing, of Cleveland, Ohio, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SESSIONS, District Judge.

PER CURIAM. This is an appeal from a decree adjudging a patent to be void for want of invention. The patent in suit, No. 635,141, was issued to Arthur H. Marks October 17, 1899, for a "process of reclaiming rubber from vulcanized rubber waste," and, through mesne conveyances, was on May 11, 1911, assigned to appellant. The bill of complaint is in the usual form, and was filed April 13, 1912; but, the patent having since expired, the only relief open to the appellant is admittedly an accounting. The answer denies both novelty and infringement, and avers that the specification was "made to contain less than the whole truth relative to" the patentee's "alleged invention and discovery," in that the patentee failed to disclose in his specification "that his alleged improvement was simply a change in the degree of temperature and the time of subjection to such temperature from that which had been long known in the art." The opinion below is reported in 227 Fed. 623.[1] It is to be observed that, shortly after the present Mr. Justice Clarke announced the opinion, the patent was held by Judge Hazel to be valid and infringed (Philadelphia Rubber Works Co. v. U. S. Rubber Reclaiming Works [D. C.] 225 Fed. 789), and that the decree was affirmed (229 Fed. 150, 143 C. C. A. 426 [C. C. A. 2]). Although the decree below is opposed to the decree entered and affirmed in the Second circuit as respects the validity of the patent, yet the facts here disclosed differ from the facts there shown concerning infringement. In the view we take of the claim allowed and the question of infringement, it is not necessary to pass upon the validity of the patent.

The object of the invention is stated in the specification to be:

"The devulcanization of the rubber in vulcanized rubber waste and the reclaiming of such rubber in a condition capable of being used for the various purposes for which fresh rubber is used and of being revulcanized."

The invention is thus described in the specification:

"The invention consists in subjecting the ground rubber waste, when submerged in a dilute alkaline solution—as, for example, a 3 per cent. solution of caustic soda—to the action of great heat, say from 344° to 370° Fahrenheit, more or less, for 20 hours, more or less, under conditions which prevent the evaporation of any considerable quantity of the solution."

---

[1] It there appears that the learned trial judge was for a time concerned with an inquiry into whether the patent was void for fraud practiced in obtaining it. 227 Fed. 626. But that feature of the case need not be considered, for (1) the evidence was regarded as insufficient to justify a finding of fraud, and (2) the United States alone can maintain a bill to annul a patent on the ground of fraud practiced in its procurement. Briggs v. United Shoe Co., 239 U. S. 48, 50, 36 Sup. Ct. 6, 60 L. Ed. 138, and citations.

The specification states reasons for substantial adherence to the process and describes apparatus designed to carry it out. The only claim allowed is as follows:

"The described process for devulcanizing rubber waste which consists in submerging the finely ground rubber waste in a dilute alkaline solution in a sealed vessel, in heating the contents of the vessel to a temperature of 344° Fahrenheit more or less substantially as specified, and in maintaining said temperature for 20 hours more or less substantially as specified."

[1] This claim in both form and essence calls for a single and continuous process, though its execution involves four steps or elements: (a) Using a dilute alkaline solution; (b) having the vessel sealed; (c) applying heat at 344°; and (d) maintaining this temperature for twenty hours. It is worked out in Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166, 36 L. Ed. 1073, that the same principle is applied to a process as to a mechanical patent—that is to say, each step in the process corresponds to each element in the mechanism, and, unless the defendant uses all the steps or all the elements, he does not infringe. The same rule of equivalency applies, and if the defendant omits one step, but uses an equivalent therefor, he does not escape infringement. However, the question of equivalency will usually be chemical, and not mechanical. These principles seem to be taken for granted in cases involving process patents, and we do not find anything to the contrary.

Where chemical changes involved are to be brought about by heat, it is, of course, true that the degree of temperature and the time of exposure are material and not immaterial features. Three hundred degrees will bring about certain instances of breaking down, 600° will bring about others, but the 600° may neutralize or destroy results caused by the 300°. The difference is not a matter of degree merely —or at least it may not be, and usually is not. So as to time. It seems true enough that if exposure for 5 hours would break down part of the material being treated, exposure for 10 hours should do twice as much; but this may not be true at all. The second 5 hours' exposure proceeds under different conditions because of the effect of the first 5 hours, and so the second 5 hours may accomplish nothing. On the other hand, the first 5 hours may serve only a preparatory purpose, and the entire chemical change may be accomplished in the second 5 hours.

[2] Pursuing the analogy to mechanical patents, it would seem that exposure to heat is the primary thing, just as the mechanical element is, and the limitations as to degree and time in the process correspond to the limitations as to shape, size, or location in the mechanical combination. If these limitations as to shape, size, and location are essential to the new result reached, they form a necessary part of the invention; but, whether necessary or not, they cannot be disregarded if they have been inserted to meet the demands of the Patent Office, or if they have been deliberately and with industry adopted, even though voluntarily. The reason, of course, is that the patent is the measure of the monopoly. The public has a right to act in reliance on any clear and expressed limitations contained in the grant.

Two somewhat different methods have grown up for treating these two classes of limitations. Where the Office has imposed a limitation as a condition of the patent, it has been strictly enforced, just as soon as the true meaning of it was ascertained; but with reference to unnecessary and voluntary limitations, whereby the patentee gave away part of his invention, the tendency has been, as is stated in Electric Smelting & A. Co. v. Pittsburgh Reduction Co., 125 Fed. 926, 937, 60 C. C. A. 636 (C. C. A. 2):

"Even if unnecessary and unreasonable limitations are incorporated in the claims, the court should interpret them liberally."

We have applied the same idea by saying that, if these unnecessary limitations are ambiguous, they may be construed to preserve the invention; but if they are clear, so that there is no room for construction, they must prevail. The limitation to 20 hours seems, at first glance, to be of the imposed class—a limitation accepted as a condition of getting the patent. The second original claim called only for "a long period." This was rejected, and thereupon the applicant accepted a patent based only on the original third claim, which contained the 20-hour limitation and was substantially the same as the amended single claim which was allowed. It is argued that the difference between "a long period" and "20 hours" was not involved in any reference cited, and was not in the mind of the examiner, but that the rejection was on broader grounds, which would cover, as it did, the original third claim also, and that the allowance of the third claim was practically a withdrawal of the objection which the examiner had made. It is then said that the patentee is estopped only to claim that construction which was shown by the reference to which he yielded, and that the estoppel does not go against a broad construction of his abandoned claim in other respects. However, if this theory be accepted for present purposes, the utmost that plaintiff can take from it is that the 20-hour limitation was a voluntary and unnecessary one, leading to a question of construction, rather than an imposed limitation, leading to a question of estoppel.

Even in the matter of construing a voluntary limitation, the acquiescence in the rejection of the second claim remains important because it shows that the 20-hour limitation was not merely casual, but that the exact subject was before the applicant, and that he deliberately chose the limited instead of the broader form of claim. After he had convinced the examiner that the invention was not anticipated, and that he was entitled to the patent for whatever his real invention was, he had put squarely before him the question: "Shall I insist upon the claim referring only to 'a long period' and so be able to reach any infringer who uses my process for a time long enough to get a substantial part of my results, and at the same time be exposed to the danger of having my patent declared invalid if that claim is too broad; or shall I be content with a claim confined to my process in the form in which I have developed it and with the limitations which I now believe essential to success—thus narrowing the scope and safe-guarding the validity of the patent?" He decided to adopt the second plan; and our attention has not been called to a case where the adoption of a limita-

tion which later developments in the art perhaps showed was unnecessary has seemed so deliberately and carefully made as here.

It is reasonably certain that in adopting the second plan the patentee was moved by the prior art. The most that is claimed in respect of discovery by the patentee is that the feature of his process on which novelty depends is the use of caustic soda at a high-temperature for the purpose of softening the rubber. The true meaning of this, as we understand the testimony tending to show such a result, is that the product of the patented process is more pliable and so more available for commercial re-use than the products of the old processes. When we consider that to vulcanize crude rubber is to harden it, and that sulphur is the agency employed for that purpose, the value of the softening effect so ascribed to the process may be fairly estimated by the influence the process has upon the sulphur contained in vulcanized rubber. The use of caustic soda at a temperature considerably above the boiling point will, it is true, remove the free sulphur, yet, according to the weight of the evidence, it will not remove the sulphur which has chemically combined with the crude rubber in the original vulcanizing process. True, one of plaintiff's experts testified that the devulcanizing effect of the process must, not that it in fact does, break down the chemical union of rubber and sulphur; but we do not think he meant to say more than that the sulphurized rubber molecules are by this process broken and so reduced in size and increased in number. It certainly could not have been meant that the chemical union is destroyed, in the sense that the sulphur is set free and removed by the process, for the expert himself testified, "I do not mean that the rubber and sulphur must be separated;" indeed, we think the weight of the evidence shows that any process which would break down this chemical union would destroy the rubber.

It is thus most difficult to appreciate any real value of the softening effect claimed. Whatever may be said, then, of the novelty of the patented process, we do not see how it practically amounts to more than a substitution of caustic soda at a high temperature for other ingredients which had been used with more or less heat through substantially the same means, for the same purpose and with similar results, in the prior art. It is to be observed, moreover, that as early as 1883, Hoffer, in his "Practical Treatise on Caoutchouc and Gutta Percha" (chapter XXIX, "Waste and its Utilization"), showed that caustic soda would desulphurize rubber. It is noteworthy that the applicant for the patent in suit was advised of Hoffer's publication in seasonable time to enable him to determine upon the course he should pursue in the Patent Office. It is true that Hoffer's process is not shown to have been successfully practiced, yet it is plainly suggestive of the use of a caustic soda solution for desulphurizing rubber. Caustic soda is referred to in the specification of the patent in suit as an effective ingredient for the "dilute alkaline solution" there mentioned, and this is the only solution called for in the claim.

Dilute alkaline solutions are familiar in this art; their use was called for in a number of the prior inventions which were designed to devulcanize waste rubber. For example: Patent No. 12,983, issued

to Sigismund Beer, May 29, 1855; No. 19,172, to Hall, in 1858; No. 311,135, to McDermott, in 1885; No. 395,987, to Mitchell in 1889; and Nos. 419,697 and 425,896, to Mitchell, in 1890. It may be added that the remaining steps of the claim in suit—i. e. the closed vessel, application of heat, and its duration—are found in the prior art, though (except as to Mitchell's patent, No. 395,987) they are lacking in definiteness when compared with plaintiff's process. Mitchell in his specification of 1889 describes (a) reclaiming reagents, such as solutions of caustic alkalies or of acids; (b) a closed vessel having sufficient strength to resist an internal pressure of 120 pounds; (c) applying heat at 338°; and (d) maintaining this temperature from 12 to 36 hours—stating that by so maintaining the temperature "the rubber will be devulcanized," and also that "this reclaiming and devulcanizing by a continuous process and at a single heat effects an enormous saving in labor and time."

[3] Assuming the validity of the patent, it must follow, from the Patent Office record and the teaching of the prior art, that the patented process is to be treated as an entirety, and the claim as limited to the full equivalents of the specific process which the claim, in connection with the specification, describes. The question is whether the processes the parties respectively employ are the same or are fairly to be differentiated. It must be conceded that the products, the one of the plaintiff and the other of the defendant, are for all practical purposes the same, and that they are both made from rubber waste; but these facts are by no means decisive of the question. We have seen that the plaintiff's process is single and continuous, though its execution involves what we have for purposes of elucidating the issue of infringement called four steps or elements; it is in reality a one-step process. The defendant's process is not single and continuous, but is literally divided into three steps; it is actually a three-step process. Defendant, by its first step, destroys the fabric by boiling the waste in an acid solution. The fabric is probably not wholly destroyed, but substantially so. Defendant, by its next step, boils the waste in an alkaline solution, for the purpose and with the effect of getting rid of the acid. Defendant then, for the third step, first begins to employ the general process of the patent in suit, but does so for 7 hours only. The antithesis of the two processes will be better appreciated by recalling here the elements of the plaintiff's continuous process. Plaintiff destroys the fabric and removes the free sulphur from the rubber. It does this, we repeat, by one continuous operation, and this actually requires approximately 20 hours for its accomplishment. Plaintiff's process and plaintiff's invention are absolutely described and defined (aside from the time limitation) as consisting in exposing the materials to a high temperature under pressure and while in a weak alkaline solution. The conditions which bring about simultaneous destruction of the fabric and devulcanization of the rubber are all coexistent within the sealed vessel from the beginning of the process to the end, and the same means which devulcanizes the rubber operates at the same time to destroy the fabric.

May it not—or must it not—rightly be said that the limitation of 20 hours was made because the patentee was intending to cover only that one-step process which would bring the compound result which he sought and which needed about that length of time? The applicant knew, and the Patent Office knew, that it was old to cut the fabric by an acid or alkali boiling, and then wash out the acid or alkali, and then expose to high heat for the purpose of devulcanizing. If the patentee had intended to cover such a process, he would have claimed only the length of time which would then be necessary (7 hours). He did in fact at first intend to give his patent that scope (a long period), but he abandoned this and took a limited form. With this history, is it possible to say that the two processes are equivalent?

It is urged that this limitation be overlooked on the authority of two decisions, Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, 30 L. Ed. 1064, and Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279; but we think neither of these cases helps plaintiff.' Neither of them is at all inconsistent with the proposition that an express claim limitation in a process patent cannot be overlooked any more than in a mechanical patent. In the first of these cases, the Driven Well Case, the claim was for the process of constructing wells by driving or forcing an instrument into the ground until it is projected into the water without moving the earth upward as it is in boring. Defendant bored his well part of the way, and then drove it the rest of the way. It was very properly held that he infringed. The subject of claim limitation was not considered, because that claim contained no limitation regarding the distance of driving, and driving for any substantial distance met the letter of the claim. If the claim had been for "driving or forcing an instrument into the ground from the surface until it is projected into the water," etc., we would have had an express limitation, and the question whether driving part of the way could be called the equivalent of driving all the way. In the second of these cases, the Soap Case, the specification described the use of heat at 600°, and the defendant used only 300°; but the patent in that case (102 U. S. 721, 26 L. Ed. 279) claimed only "a high temperature." The court was bound to say, as it did, that the reference to 600° constituted only the inventor's preferred method of using his invention, and that the description of his patent covered any high temperature which would accomplish his results. In the Aluminum Case, 125 Fed. 926, 928, 60 C. C. A. 638, the claim referred merely to "passing an electric current" through the material, and the court refused to narrow this broad claim because the specification described current of a certain intensity.

Furthermore, as we have already in substance said, the principle is applicable that a claim for a combination is not infringed if any one of the elements is omitted without substitution of an equivalent. Cimiotti Unhairing Co. v. Am. Fur. Ref. Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100; Union Paper Bag Mach. Co. v. Advance Bag Co., 194 Fed. 126, 138, 114 C. C. A. 204 (C. C. A. 6). The distinguishing characteristics inhering in the two processes would seem to point to the pertinency of this principle. We may say again: Defendant first removes the fibrous matter by an old acid process; next, it removes the acid by an old washing method. These steps are dis-

tinct and preparatory; neither exists in plaintiff's process, nor is either the equivalent of anything contained in that process; these two steps together occupy a period of something less than 3 hours. The defendant thus defiberizes the rubber waste before it begins to devulcanize the rubber, though, it is true, the defendant then commences the use of plaintiff's general process, but continues the use for 7 hours only. Now, whatever may be the effective means or length of time used in plaintiff's process to defiberize the rubber waste, it is enough to say that defendant does not employ the process for that purpose; and, if time—the 20-hour period—is to be given the continuous and unitary effect embodied in the claim, defendant has no occasion to and does not use that process, certainly not the whole process. Thus defendant achieves an old result in less than half the time plaintiff employs to produce the same result; and, in view of all the foregoing considerations, we cannot say that infringement is shown.

The decree will be modified by an order directing the bill to be dismissed on the ground that the charge of infringement is not sustained.