McCALLUM v. PITTSBURGH & CLEVELAND COAL CO.

(Circuit Court of Appeals, Sixth Circuit. October 5, 1920.)

No. 3361.

1. Patents ⬛328—934,562, for suspending device for trolley wires, held valid, but not infringed.

McCallum patent, No. 934,562, for suspending device for trolley wires, *held* valid, although first two claims thereof *held* too broad; also *held* not infringed.

2. Patents ⬛165—Intentional limitation binding, though voluntary.

An express, intentional limitation of claims is binding on the patentee, although entirely voluntary.

3. Patents ⬛237—Different and poorer way of obtaining same result not mechanical equivalency.

In patent infringement suit, *held*, there was no mechanical equivalency, where defendant's device, although effecting substantially the same result as complainant's, effected it in a different way, and probably not as well.

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit by William A. McCallum against the Pittsburgh & Cleveland Coal Company. From a decree of dismissal, complainant appeals. Affirmed.

⬛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

L. M. Hosea, of Cincinnati, Ohio (Hosea, Knight & Phares, of Cincinnati, Ohio, on the brief), for appellant.

Drury W. Cooper, of New York City (Brown & Nissen, of Chicago, Ill., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent to McCallum, No. 934,562, September 21, 1909, on suspending device for trolley wires. 'This appeal is from a final decree dismissing the bill for noninfringement.

[1] The device of the patent consists of duplicate clamping ears (for holding the trolley wire); their upper parts being tapered in the form of a cone frustum, the ears being normally held together by a conical compression cup seated upon and embracing the external surface of the tapered ear-extensions. A cylindrical suspending stem, whose upper end is externally or internally screw-threaded to conform to the hanger connection which it is to engage, extends downwardly through the compression cup and into an aperture formed in and near the base of the tapered ear extensions, where through a circumferential groove near its lower end it engages an inwardly extending annular ledge in the aperture in the ears, thus permitting a complete rotary, but only a limited longitudinal, movement of the stem within the ears. A collar, shown as of hexagon shape, is seated upon the upper edge of the compression cup (but is not integral with the cup), and embraces the upper end of the stem. Adjustment is effected by grasping the device by its compression cup, thus allowing the stem to drop to its permitted limit, and so spreading the ears enough to receive the wire, whereupon (the device being then held by the clamping ears) the compression cup falls into position over the tapered ear portions. Rotation of the collar (by means of a pin there through engaging a longitudinal slot in the stem, or by a wrench applied to the collar) brings the latter into contact with the under surface of the hanger and raises the stem, whereby the head on its lower end comes into contact with the ledge on the ear aperture, drawing the ears up tightly together, and firmly seating the compression cup thereon. The collar acts as a jam nut. The stem does not directly contact with the under surface of the hanger. This clamping movement does not necessarily involve rotation of the ear itself, which, however, is free to rotate sufficiently for effecting adjustment to any desired radial relation with the hanger. The first claim, which is the broadest, reads as follows:

"1. A suspending device for trolley wires, said device comprising a two-part holding ear, adapted to receive and clamp a trolley wire, a member mounted on and movable relatively to the ear for retaining the two parts of the latter together in their clamping position, and a member rotatively mounted in the ear and having means for the attachment of a hanger or support."

The second claim, which is more specific, reads thus:

"2. A suspending device for trolley wires, said device including a two-part holding ear, adapted to receive and clamp a trolley wire, means comprising

a compression member mounted on the exterior of the ear, adapted to retain the two parts of the ear in their clamping position, and a stem rotatively mounted in the ear and having a threaded portion to screw into engagement with a hanger or support and to thereby increase the clamping effect of the ear upon the wire."

The remaining claims are more detailed and require no present reference to their language.

Both validity and infringement depend, of course, upon the extent of the advance made in the art, which was old and crowded when McCallum applied for the patent in suit. Duplicate clamping ears were old, and in substantially the form shown by the patent in suit, running back to Fricker (1891), and continuing down through to Richardson (1906), Davis (1909), and Aalberg (1909). The clamping of the jaws by external compression upon upward extensions of the ears, and by means of a member moving relatively to the ear, was also old, as illustrated, for example, by Fricker's screw cap, Gilmore's conical compression sleeve (1907), and Richardson's collar forced down by an insulator bolt. It was also old to simultaneously lift the ears and press down the compression member so as to clamp the ears. McCallum himself had in 1900 secured a patent (No. 659,823) upon a device embodying every element of the 1909 patent in suit (and with substantially the same form and mode of operation), except the complete rotativeness of the stem. In this 1900 device the lower end of the retaining bolt was nonrotatively held (in the sense in which the term "rotatively" is used in the patent in suit), by means of a head or nut thereon, within a recess in the upper part of the jaws. It had, however, a pair of clamping members whose upper parts formed a cone frustum, a compression cup, and a hexagon nut (nonintegral) seated upon the bolt whose movement drew upward, tightened, and locked the clamping members.

The specification of the 1900 patent declares that the device there shown "permits not only unlimited longitudinal adjustment of the clamp in relation to the wire, but also unlimited annular or radial adjustment of the trolley wire in relation to the brace or other initial support." In the 1909 patent rotativeness of the stem independently of both the hanger and the clamping ears is accomplished by the already described method of engagement between stem and hanger connection at the upper end and the aperture in the ear extensions at the lower end—thus equalizing the pressure against the hanger and wire and effecting a practically simultaneous "through grip" between those members. This feature of complete rotation of stem is the most prominent idea of the patent in suit.

There was, however, nothing novel in the broad idea of a stem rotatively mounted in the ear. Setting to one side the use in the prior art of a hanger or insulator bolt rotatively mounted in a nut or similar device within the ear, we find in Davis an internally threaded stem embracing an externally threaded hanger rod, the rotation of the stem pressing the lower end of the hanger rod against the clamping block, and lifting the ears through the medium of a shoulder on the stem which contacts with the under surface of the upper seg-

ments of the ear, effecting a "through grip" between hanger and wire; this action including the forcing of the clamping means in opposite directions, and being of a similar nature to that of the device of the patent in suit, although Davis had strictly no compression ring, and the compressing action of his clamping block differs somewhat from that of McCallum's ring or cup.

True, Davis discloses a longer hanger rod, not suitable for mines, car barns, and other places of limited overhead space, for which uses the device of the patent in suit is specially adapted; and his stem is much shorter than McCallum's; but not only does McCallum's specification broadly declare his invention to relate to "suspending devices. used to maintain trolley wires of electric railways in position for use," but Davis' specification expressly states that, while his device is specially adapted for use with grooved trolley conductors suspended from messenger wires or cables, "it may be employed in connection with conductors of circular cross-section that are supported from brackets or cross-wires in accordance with a well-known practice for low potential lines." It seems clear that the two devices must be considered to be in the same art. Davis' device could apparently be adapted by ordinary mechanical skill to mine use, and the length of stems standardized to meet different sizes of trolley wires.

From what has been said, it is apparent that the device of the patent in suit marks but a short advance in a crowded art, although, in view of the specific construction and functions of the rotating stem[1] and the favorable reception of the device by the public, we are disposed to recognize the presence of invention therein, except that (as we are inclined to think) the first claim is too broad to be sustained in view of the prior art; the same being true of the second claim so far as the compressing element of Davis' clamping block may be thought to be (as we think it is essentially)[2] mounted "on the exterior of the ear."

Defendant's clamping jaws are not held together by a cup, ring, or other compressing member, but by a hinge pin passing longitudinally of the jaws through perforations in lugs thereon. This hinge pin also passes through and secures against rotation a pin extending downwardly from the lower section of the stem, and so mounted therein as not to interfere with the stem's rotation above the pin last referred to. The upper extensions of the clamping jaws are not tapered as in McCallum, but are spread outwardly above the hinge pin; the clamping being effected by the entering of an (inverted) conical extension of the hexagonal nut into the chamber made by the flaring upper portions of the ears, spreading them apart, and there-

[1] The specification says: "I regard the functional arrangement of the rotatable stem in relation to the ear as one of the important features of my invention," etc.

[2] While the Davis' clamping block lies largely between the upper extensions of the ears, it engages them externally, and also externally grasps and compresses the clamping jaws themselves.

by bringing together the lower parts of the jaws, through the action of the hinge therein.

Each claim of the patent in suit calls, not only in express terms for a stem rotatively mounted [or socketed] in the ear, but by necessary construction for an external compression member—the language of the first claim in the latter respect being "mounted on and movable relatively to the ear"; that of the second, "mounted on the exterior of the ear"; that of the third, "a compression ring enclosing the ear"; that of the fourth and fifth, "a ring tapered to fit upon and hold the ear parts in compression"; that of the sixth, "a compression ring for holding the ear parts clamped," etc.; that of the seventh, "a compression ring." No claim of the patent in suit reads in terms upon defendant's device, for obviously defendant has no external compression member; and unless the spreading extension of his hexagonal nut operating within the ears is the mechanical equivalent of McCallum's external compression collar, there is no infringement.

Whatever might be thought of the question, were there a different state of the prior art and a different record, we think the prior art and the record before us clearly preclude a finding of equivalency. This art embraced two distinct and oppositely operating types of clamping devices, the external compression and the internal spreading. McCallum belongs to the former type; defendant to the latter, which is prominently represented by Wood (1894) and Brodie (1897), as well as by McCallum's 1900 device. Apart from the consideration about to be stated, it is to our minds at least doubtful whether the permissible range of equivalents could be extended to a type so readily distinguishable from that described in the claims. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 286, 294, 37 Sup. Ct. 502, 61 L. Ed. 1136. The record, however, indicates that McCallum deliberately chose the external compression type in both of his patents, because of what he deemed its manifest superiority over the internal or spreading type, for several reasons clearly stated in his testimony.

[2] The patent in suit nowhere suggests the possibility of adapting his device to the outwardly spreading hinged-ear type, nor even to the existence of such a type, although evidently well known to him. In our opinion, his claims are expressly limited to an external compression—not only by the specification and drawings, but by the language of the claims themselves. Such intentional limitation would be binding on him, although entirely voluntary. McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Cimiotti v. American Co., 198 U. S. 399, 415, 25 Sup. Ct. 697, 49 L. Ed. 1100; Ohmer v. Ohmer (C. C. A. 6) 238 Fed. 182, 193, 151 C. C. A. 258.

The Patent Office history confirms the conclusion of deliberate choice, and wholly apart from the question of estoppel, which we do not find it necessary to consider. In the first claim as originally drawn the collar element was described as "means for retaining said parts together by compressive action applied to the members ex-

teriorly"; in the second claim, as "means for holding said parts clamped upon the wire by compressive action applied to the clamping members"; in the third, as "a compression ring adapted to hold the parts of the ear in compression against the trolley wire." Each of these claims was rejected upon the prior art, including McCallum (1900), Richardson, and two other references. Objection was also made to the "ambiguity and obscurity of the expression found in these claims—'means for engaging the device to a hanger or other support by rotative action,'" etc. The applicant accordingly presented new claims 1, 2, and 3, in which were substituted for the original definitions the following, respectively—"mounted on and movable relatively to the ear," "a compression member mounted on the exterior of the ear," and "a compression ring inclosing the ear."

The antithetical use in some of the claims of the words "or" and "in" with regard to the mounting of the compression ring and stem respectively in their relation to the ear is not without significance.

In defendant's device the compression ring is wholly omitted, for the obvious reason that the form of the device otherwise was such as to make it not only unnecessary but wholly inappropriate. The most that defendant can be thought to have taken from McCallum is the rotatable stem (found also in Davis), which stem is made an element of the claims of the patent in suit only in combination with the externally mounted and operating compression cup or ring. Infringement is thus lacking, regardless of the question whether the spreading element of defendant's device should be considered a part of the rotating stem.

[3] While, therefore, defendant's device effects substantially the same result as McCallum's, it effects that result in a different way, and probably not as well. This is not mechanical equivalency. Showcase Co. v. Baker (C. C. A. 6) 216 Fed. 341, 354, 355, 132 C. C. A. 485.

We think Judge Sater properly reached the conclusion of noninfringement, and that the decree dismissing the bill should be affirmed.