## LAKEWOOD ENGINEERING CO. v. STEIN et al.

(Circuit Court of Appeals, Sixth Circuit. July 16, 1925. Rehearing Denied January 7, 1926.)

### No. 4314.

**1. Patents ⟝157(1)—Inventor may choose own language in describing invention or stating claims, which must be given plain, usual, and ordinary meaning.**

Inventor may choose his own language in describing his invention, and in stating claims, but that description is basis of grant of patent monopoly, and must be construed in accordance with its plain, usual, and ordinary meaning.

**2. Patents ⟝165—If claims clear and distinct, patentee may not go beyond language.**

When a claim is clear and distinct, patentee may not go beyond words of his contract to establish infringement, and the range of equivalents must be measured by what is both described and claimed.

**3. Patents ⟝328—Patentee having declared that drag beam was "loosely hung" by chains cannot claim that it was "loosely suspended" by lifting device.**

As patentee of the Hewitt patent, No. 893,168, specifically declared in application that drag beam of his machine was "loosely hung" by means of chains, and that he used such phrase to distinguish from a stationary bearing frame, he cannot, in infringement suit, claim that his drag beam is "loosely suspended" from truck frame by a lifting device incorporated into machine for a different purpose.

**4. Patents ⟝328—893,168, claims 1, 3, for cement spreading machine, held not infringed.**

The Hewitt patent No. 893,168, claims 1, 3, for cement spreading machine, with drag beam loosely hung from wheeled frame and means for laterally reciprocating drag beam by forward movement of wheeled frame, held not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit for the infringement of a patent by the Lakewood Engineering Company against Calvin H. Stein and others, doing business as a partnership under the name and style of Stein, Geisel & Stein. Decree for defendants, and plaintiff appeals. Affirmed.

Frank E. Dennett, of Milwaukee, Wis. (Thurston, Kwis & Hudson, of Cleveland, Ohio, on the brief), for appellant.

Arthur Wm. Nelson, of Chicago, Ill. (Rudolph Wm. Lotz and Samuel Horwitz, both of Chicago, Ill., on the brief), for appellees.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge. The Lakewood Engineering Company filed a bill of complaint in the District Court, alleging that it was the owner, by purchase on the 21st day of July, 1922, of United States letters patent 893,168, issued July 14, 1908, to Isaac Hewitt; that defendants, doing business under the firm name and style of Stein, Geisel & Stein, were infringing claims 1 and 3 of this patent, by the use of a machine known as the Ord concrete road surfacer, and asked for an injunction and accounting. The answer denied infringement, and alleged that the Hewitt patent is without utility, invalid and void, and that it had recently been purchased by the plaintiff merely to harass, persecute, and hinder the manufacture of defendant's machine by threats against prospective purchasers and by this suit. The District Court found claims 1 and 3 of Hewitt invalid, if broadly construed, or if given such narrow construction as to make these claims valid, the defendant did not infringe.

The Hewitt patent relates to a machine designed for spreading and surfacing cement over a flat horizontal surface, such as a sidewalk. The claims in suit are as follows:

"Claim 1. In a cement spreading machine, a drag beam loosely suspended from a wheeled frame and means for laterally reciprocating said drag beam."

"Claim 3. In a cement spreading machine, a drag beam loosely suspended from a wheeled frame and means for laterally reciprocating the drag beam by the forward movement of the wheeled frame."

Claim 1, as first written in the application for this patent, reads as follows: "In a cement spreading machine, a drag beam sus-

pended from a wheeled frame and means for laterally reciprocating said drag beam." Both claims 1 and 3 were rejected upon Shabley No. 51,757, Perkins No. 484,815, Balyeat No. 826,137 and Neal No. 503,434. Thereupon the inventor requested reconsideration of claims 1 and 3 for the reason that "the references cited are foreign art and not applicable to these claims." To this request the examiner replied: "The expression 'loosely' upon which applicant relies to distinguish claim 3, should be accurately defined in the description. Applicant's contention that the references do not show a drag suspended from a wheeled frame is believed to be without foundation, in view of the vibrating bars *G* of Perkins or the toothed bars *H* of Balyeat. Applicant's assumption that the art of references is unrelated to the references is unwarranted. Both are devices for leveling. Claims 1 and 3 are accordingly rejected."

The applicant, without further questioning the applicability of the Patent Office references, and for the evident purpose of distinguishing therefrom, amended claim 1 by inserting the word "loosely," and the word "loosely" was further defined by an amendment now appearing in lines 27, 28, 29, 30, 31, 32, and 33 of the patent as follows: "When I speak of the drag beam *2* being 'loosely hung,' etc., I desire this expression understood to mean any suspension of the drag beam whereby the same will be relatively loose as contradistinguished from being held in a stationary bearing frame." Claims 1 and 3 were then allowed.

In the structure of the patent in suit, a lever *11* is pivotally mounted on the truck frame and connected by a chain *14* to the drag beam, by which the drag beam may be lifted clear of the surface when desired.

The drag beam is loosely suspended by chains *3* to the wheeled frame. The purpose of this loose suspension is explained in the specifications of the patent as follows: "The loose manner in which the beam is connected by chains *3* to truck frame *4* while permitting reciprocation of the beam does not confine it to rigid lines of movement."

The Ord machine is intended and adapted for concrete highway construction, which differs from cement sidewalk construction in that no finishing coat of cement mortar is applied to a concrete subsurface. It consists in part of a wheeled frame provided with two screeds that may be lifted from the surface by chains connected with a bell crank lever. For the purpose of this case it may be assumed that these screeds correspond to the drag beam of Hewitt. There are no other chains whatever connecting these screeds with a wheeled frame, but on the contrary they are held in a stationary bearing frame between antifriction rollers which confine them to rigid lines, both in their forward and transverse movements. These stationary bearing frames consisting of or including antifriction rollers are in no sense the equivalent of the chains *3* of the Hewitt machine, by means of which the drag beam is "loosely suspended" from a truck frame in such manner that, "while permitting free reciprocation of the beam, does not confine it to rigid lines of movement."

The claim of the appellant that the chains attached to the screeds of the Ord machine and connected with a bell crank lever by means of which the screeds are raised or lowered are the equivalent of the chains *3* of Hewitt, by which the drag beam of Hewitt is loosely suspended to the truck frame is not tenable. These chains correspond to the lifting device of the Hewitt structure and not to the loose suspension accomplished by the chains *3* attached to the drag beam and wheeled frame. Whether the Ord lifting device infringes another claim or claims of this patent is not an issue in this suit. Nor can it be consistently claimed that this chain *14* connected to the lever *11* in Hewitt for raising and lowering the drag beam is the "loosely suspended" feature of the Hewitt invention, because it permits the drag beam to rest on the rails and rise or fall while the machine is in operation, without aid or hindrance therefrom. That contention is fully answered by Hewitt himself, in the specifications of the patent, in this language: "The essential feature of the machine consists of a heavy drag beam *2* loosely hung by means of chains *3* from a truck frame *4* carried by flanged wheels *6* on a light track of any suitable character such as the curb boards *5* which limit the width of the sidewalk or section over which it is desired the cement shall be spread." It further appears that in other claims not in suit "means for lifting the drag beam" is included as a separate and distinct element from "loosely suspended."

[1, 2] In view of this specific definition of "loosely suspended" and specific description of the means by which this result is accomplished, it is wholly unimportant whether the Patent Office history of this patent, as exhibited by the file wrapper, discloses facts that would estop the inventor from now insisting upon such a broad construction of

his claims (Stumpf v. A. Scheiber Brewing Co., 252 F. 142, 164 C. C. A. 254; Baltzley et al. v. Mfg. Co. [C. C. A.] 262 F. 423), or whether the limitation of the claims was intentional and voluntary on the part of the applicant (McCallun v. Coal Co. [C. C. A.] 268 F. 831). An inventor may choose his own language in describing his invention and in stating his claims, but that description is the basis of the government's action in granting him patent monopoly, and must be construed in accordance with its plain, usual, and ordinary meaning, the same as if written into any other contract. Philadelphia Rubber W. Co. v. Portage Rubber Co., 241 F. 108-110, 154 C. C. A. 108. When a claim is clear and distinct, a patentee may not go beyond the words of his contract for the purpose of establishing infringement, and the range of equivalents must be measured by what is both described and claimed. Jones v. General Fireproofing Co., 254 F. 97-101, 165 C. C. A. 501; Homer-Brook Co. et al. v. Hartford Fairmont Co. (C. C. A.) 262 F. 427, 430, and cases there cited.

[3] Hewitt having specifically declared, in his application for this patent, that the drag beam of his machine is "loosely hung by means of chains 3 from a truck frame 4 carried by flanged wheels," and that he used the phrase "loosely hung" for the purpose of distinguishing from a stationary bearing frame, cannot now be heard to say that his drag beam is "loosely suspended" from the truck frame by a lifting device incorporated into his machine for a wholly different purpose, and included in other claims of his patent as means for accomplishing such other purpose, nor that a stationary bearing frame, consisting in whole or in part of antifriction rollers that confine the drag beam or screeds to rigid lines in both forward and transverse movements, is the equivalent of the means employed by him, not only to avoid such rigid lines or movement, but also to distinguish his claimed invention from the prior patent art.

[4] It also clearly appears from the patent exhibits, especially Perkins No. 484,815, Balyeat No. 826,137, Reimers No. 117,330, Scarr No. 252,806, all of which we think are in a closely related art and Chambers No. 413,846 and Ecke No. 653,795, both of which are road-making machines, that when plaintiff filed his application for this patent there was nothing new or novel in a drag beam suspended from a wheeled frame, free to rise or fall, independent of the upward or downward movement of the carriage, but confined by a bearing frame to rigid lines in forward and transverse movements, and for that reason the words "loosely suspended" were essential to distinguish Hewitt's claimed invention from the prior art. It also clearly appears that the Ord machine, by confining the forward and transverse movement of its screeds to rigid lines, corresponds to the machines of the prior art, and in this respect wholly differs from the Hewitt machine in its only new and novel feature. Nor is there anything new or novel in the means employed by either Hewitt or Ord in accomplishing the forward motion of the carriage and reciprocating movement of the drag beams or screeds either separately or simultaneously.

Claim 3 is identical with claim 1, except that "means for laterally reciprocating the drag beam are limited by the phrase 'by the forward movement of the wheeled frame.'"

In the Ord machine the forward movement of the wheeled frame has nothing whatever to do with the lateral reciprocating movement of the screeds. The Ord machine has a gasoline engine which furnishes the power for moving the wheeled frame forward or backward through one set of gears and for reciprocating the screeds transversely with the movement of the wheeled frame through wholly separate and independent gears, so that the travel of the wheeled frame is in no wise essential to the reciprocating movement of the screeds crosswise of the road. This is claimed to be important for the reason that specifications for concrete highway construction "calls for joints at intervals, sometimes as often as fifty feet apart * * * and that it is customary in the operation of the Ord machine when you come to the joint to stop the machine and work the concrete a little while under and around the joint and to pass on." Except for this, it is, of course, necessary that the carriage of the Ord machine should move simultaneously with the reciprocating movement of the screeds, and this may be accomplished either through the separate gears or by coupling them together with clutches. But, in either event, the forward movement of the wheeled frame has no more to do with the reciprocating movement of the screeds than the reciprocating movement of the screeds has to do with the forward movement of the wheeled frame.

For the reasons stated, the decree of the District Court is affirmed.