## BUCKEYE INCUBATOR CO. et al. v. BLUM.

(District Court, N. D. Ohio, E. D. February 14, 1927.)

**1. Patents ⬡66(1)—Prior patent is not part of prior art, except as disclosed on its face, and cannot be reconstructed in light of patent in suit and used as an anticipation.**

Prior patents are not a part of prior art, *except as to what is disclosed on their face,* and they cannot be reconstructed in the light of an invention in suit, and then used as an anticipation or to repel novelty.

**2. Patents ⬡53—Process patent is not anticipated by mechanism which, with alterations, might be adapted to carry out process.**

A process patent can only be anticipated by a similar process, and not by a mechanism which might, with slight alterations, be adapted to carry out that process.

**3. Patents ⬡7—Process patent must consist of series of steps or sequences of operations, though operation is continuous and leads to single result.**

Process patent is independent of apparatus or means of practicing it, and must consist of a novel series of steps or sequences of operations, even though operation is continuous and leads to single result.

**4. Patents ⬡11—The mere function of a machine, or mere result, is not patentable.**

The mere function of a machine is not patentable, nor will patent issue for mere result.

**5. Patents ⬡7—Construction of method or process claim is controlled by same rules as apply to apparatus claims.**

In construing method or process claim, and in determining whether or not it is infringed, the same rules are applied as are applicable to apparatus claim.

**6. Patents ⬡167(1), 175—Resort may be had to specifications or prior art, and even to apparatus used in determining method or process of patent.**

In determining what the method or process of patent is, resort may be had to specifications

or to prior art, and even to apparatus or means set forth to practice the process.

**7. Patents ⬡328—1,262,860, claims 1 and 2, for incubator, held not infringed; "current."**

Smith patent, No. 1,262,860, claims 1 and 2, for incubator, being means for "applying a current of air" to eggs in different steps of incubation, *held* not infringed by defendant's device, involving only agitation of air, without a current in any definite or predetermined direction; "current" meaning a continuous movement in the same direction, as a fluid or stream.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Current.]

In Equity. Patent infringement suit by the Buckeye Incubator Company and another against Joseph A. Blum, doing business as the Twentieth Century Hatchery. Bill dismissed.

Hull, Brock & West, of Cleveland, Ohio, and Border Bowman, of New York City (Chas. E. Brock, of Cleveland, Ohio, of counsel), for plaintiffs.

Toulmin & Toulmin, of Dayton, Ohio, and G. O. Farquharson, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This suit again brings before me for consideration United States letters patent 1,262,860, issued April 16, 1918, to Samuel B. Smith. Infringement is charged of claims 1 and 2 only. Although invalidity is again urged, the defense mainly relied on is noninfringement. In Buckeye Incubator Co. v. Wolf (D. C.) 291 F. 253, this patent was fully examined, and all of its claims were held valid. Upon appeal the decree was affirmed. Wolf v. Buckeye Incubator Co. (6 C. C. A.) 296 F. 680. Since then this patent has been involved in no less than 25 lawsuits, of which some 14 were settled before hearing, and in 5 decrees for the plaintiff were rendered. In 2, noninfringement was found. Only one of these decrees has been appealed from, and the Circuit Court of Appeals, Third Circuit, has recently announced an opinion (Buckeye Incubator Co. v. Cooley, 17 F.[2d] 453) in substantial accord with that of our own Circuit Court of Appeals.

On this hearing, the commercial history of the patented device has been brought down to date, and appears to be even more impressive. No new art of controlling importance is now presented. The only additional patents in the incubator art are Bell, 691,837, Perkins, 798,697, and German patent issued to E. Stulik November 7, 1921. The patent last cited is for a hatching method, and has some pertinency to the method claims in is-

sue. Neither Bell, Perkins, or Stulik, however, present any substantially new considerations touching the question of validity. Certainly nothing disclosed in them raises any doubt as to the soundness of the conclusions already reached on the question of validity. The other patents are in the heating and ventilating art, pertaining particularly to ordering and drying of tobacco and fabrics.

Proctor, 553,723, discloses an apparatus structurally quite similar to Smith, and it is quite possible that this apparatus could be reconstructed, so as to practice the Smith hatching method. It is, however, an apparatus for ordering tobacco; i. e., so treating the tobacco as to put it in a moistened condition suitable for handling. The French patent to M. Magniez, published October 13, 1903, has in fact been reconstructed by the defendant and used for hatching eggs. Its method, however, is quite different from any claimed by Smith. It is an apparatus for drying chocolate. As to these two patents, and others of like nature, it may be said, first, that they are not in an analogous, but in a wholly remote art; and, second, that reconstruction and rearrangement were necessary in order to adapt either one to hatch eggs. I do not agree that Smith's invention is in an art so closely analogous to heating and ventilating that it is anticipated or deprived of patentable novelty by devices found in the latter art, even though by slight changes the same might be made available to hatch eggs.

[1] As to mechanical patents, the law is settled that prior patents are not a part of the prior art, except as to what is disclosed on their face, and that they cannot be reconstructed in the light of the invention in suit, and then used as an anticipation or to repel novelty. This is particularly true, if the prior patents contain no suggestion that they were designed by the maker for the performance of the functions of the patented device, and were in fact never adapted or actually used for that purpose. See Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Frey v. Marvel Auto Supply Co. (6 C. C. A.) 236 F. 916, 918; Stead Lens Co. v. Kryptok (8 C. C. A.) 214 F. 369, 375.

[2] Moreover, the claims of Smith's patent now in issue are for a method and process, and as to process patents a rule somewhat different obtains. In Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 424, 22 S. Ct. 698, 707 (46 L. Ed. 968), it is said:

"A process patent, such as that of Jones, is not anticipated by mechanism which might with slight alterations have been adapted to carry out that process, unless, at least, such use of it would have occurred to one whose duty it was to make practical use of the mechanism described. In other words, a process patent can only be anticipated by a similar process. A mechanical patent is anticipated by a prior device of like construction and capable of performing the same function; but it is otherwise with a process patent."

Our former conclusion as to the validity of the Smith patent, including the claims in issue, is approved. Smith made a meritorious invention. He did not found the art of incubating or hatching eggs by artificial methods. It is true, however, that the popular and prevailing type of a single chamber incubator, with a stack or series of stacks of eggs, owes its existence to his invention. The advantages and economies of this type of incubator are so great as to entitle him to a liberal range of equivalents.

Defendant uses an incubator known as the Aero, made by the Aero Incubator Company, of Springfield, Ohio. The question in this case is whether the hatching method of this apparatus is an infringement. It is an open question, now to be determined for the first time. In the former litigation, the apparatus held to infringe was an exact copy of Smith, and it was unnecessary to determine with exactness the scope of the method claims. It was then said: "No question of invention or infringement turns on a close construction of all or any of the three claims." It is now necessary to make this examination, and this duty will be performed independently and unembarrassed by any general language in our former opinion not called for by the facts then in issue.

[3, 4] A process patent is independent of the apparatus or means for practicing it. It must consist of a novel series of steps or sequences of operations, even though the operation is continuous and leads to a single result. The mere function of a machine is not patentable. Likewise a patent will not issue for a mere result. Any one is free to devise a new method to accomplish the same result, or to construct a new apparatus capable of realizing the same functions. In the present case, the result is the hatching of eggs. The function of the Smith apparatus is the maintaining of a reasonable uniformity of temperature, with an adequate supply of oxygen and moisture during the period of incubation. Any one may, if he can, get this result, or construct a device realizing these functions, provided only he does not appropriate the series or sequences of steps consti-

tuting Smith's hatching method, or the elements of his apparatus claims. It is defendant's contention that the incubator used by him does not infringe, even though it hatches eggs and maintains uniformity of temperature, with adequate moisture and oxygen, because he does not appropriate the series or sequences of the steps of Smith's method. In so far as the apparatus claims of the Smith patent are concerned, this contention is not in dispute. No charge is made that those claims are infringed. The controversy pertains solely to the alleged appropriation of Smith's hatching method.

[5] In construing a method or process claim, and in determining whether it is infringed, or not, the same rules are applied as with an apparatus claim. The steps or sequences of operation of the former are regarded as the equivalent of the elements of the latter. If any of the essential steps of the process are omitted, the effect upon infringement is the same as the elimination of an element. If something is introduced to take the place of the omitted step, then the question of equivalency arises and must be determined by like rules. See Philadelphia Rubber Works Co. v. Portage Rubber Co. (6 C. C. A.) 241 F. 108.

[6] Likewise, in determining definitely what is the method or process of the patent, resort may be had to the specifications or to the prior art, and even to the apparatus or means set forth to practice the process. See Tilghman v. Proctor, 102 U. S. 707, 721, 26 L. Ed. 279; Carnegie Steel Co. v. Cambria Iron Co., supra, 415 (22 S. Ct. 698). Furthermore, limitations upon the scope of a process claim may result from rejection in the Patent Office and acquiescence therein by the applicant. See Royer v. Coupe, 146 U. S. 525, 532, 13 S. Ct. 166, 36 L. Ed. 1073. It is by the light of these principles that the questions at issue must be decided.

[7] Of the method claims in issue, claim 1 is the broadest, and will be selected for discussion. It is in these words:

"1. The method of hatching a plurality of eggs by arranging them at different levels in a closed chamber having restricted openings of sufficient capacity for the escape of foul air without undue loss of moisture and applying a current of heated air, said current being created by means other than variations of temperature and of sufficient velocity to circulate, diffuse and maintain the air throughout the chamber at substantially the same temperature, whereby the air will be vitalized, the moisture conserved and the units of heat will be carried from the eggs in the more advanced stage of incubation to those in a less advanced stage for the purpose specified."

The alleged novel step of the Smith method consists in the application of a current of heated air to eggs in different stages of incubation, whereby the heat units will be carried from those in a more advanced stage to those in a less advanced stage. It is and was well known prior to Smith that eggs in advanced stages of incubation generate and emit heat. Therefore, if eggs are placed in an incubator at different periods, those in the most advanced stage will become substantially hotter than the rest, and hence some means are necessary to preserve uniformity of temperature throughout the entire chamber.

In Stulik, above cited, this problem was fully stated and recognized. He sought to solve it by placing the heating units at the bottom of the chamber, and setting the eggs in open bottom trays at predetermined intervals, placing those first set in the lowest tiers, closer to the source of heat, and removing them from time to time to higher levels and setting fresh eggs in their place. The heating means of Stulik was an ordinary lamp. The only air currents procured by him were convection currents, ascending through the column of egg trays.

As will appear from our former opinion and the opinion of the Circuit Court of Appeals, Third Circuit, in Buckeye Incubator Co. v. Cooley, 17 F.(2d) 453, Smith and others had attempted to solve this problem in different ways. In summing up these prior efforts, Judge Woolley, delivering the opinion for the Third Circuit Court of Appeals, says: "While we have studied all these uses in their details, they are enough alike in their essentials to be described as containing a heating means and a motor driven fan above or at the top of a chamber where eggs are placed in trays and the trays arranged in tiers. Heated air is driven from the top downwardly against and around the eggs where, after circulating about them, it escapes through the chamber doors or other openings."

Smith solved the problem and procured and kept uniformity of temperature in the manner described in our former opinion. Briefly stated, he devised a central corridor or chamber, with two egg or hatching chambers, one on each side of and separated from the central corridor by partitions, with openings both at the bottom and the top of the corridor partitions to allow for the circulation of air. In this central corridor he placed fans and

heating units. In operation the air is forced downward through the central corridor, heated by steam coils or radiators therein, mushroomed against the floor, and passes in both directions under the bottoms of the partition, whence it ascends through the column of egg trays, and back into the central corridor through openings at the partition tops. By this means, air is driven or circulated at all times through channels more or less restricted, and is delivered first to eggs in the advanced stage of incubation, carrying away from them heat units and delivering the same to eggs in a less advanced stage. Even if not so stated, this method necessarily implies that the air current should play first upon the eggs in the most advanced stage.

The apparatus claims call for the elements of a device thus constructed and functioning strictly in conformity to these principles. The method or process claims need not necessarily be so limited. However, claim 3, and also, in my opinion, claim 2, of the method claims in issue, call for a process limited to this exact series of steps. Claim 1, above quoted, is broader. Plaintiff contends that Smith's method and claim 1 are broad enough to include any hatching method whereby eggs in different stages of incubation are inclosed in the same incubator chamber, and air is so agitated that heat units given off by eggs in the advanced stage will be diffused throughout the chamber and around eggs in a less advanced stage. Defendant, on the other hand, contends that claim 1 calls for a process only, which requires the application of a current of heated air, more or less controlled, first to eggs in the advanced stage, and does not include merely stirring or agitating air, even though by so doing the temperature is kept reasonably uniform, regardless of the varying stages of incubation.

The manufacturer of defendant's apparatus issues, with its delivery, instructions that all eggs should be set at one time. If this were done, plaintiff does not contend that the method would infringe. The defendant uses two Aero incubators, one for a single stack of egg trays, and the other for three stacks. The evidence shows that defendant does not use the single stack incubator in accordance with the instructions, but sets the eggs in a series, so as to have them in varying stages of incubation. He testifies that this was done because the capacity of the heating unit is not adequate to get a sufficiently high temperature, if all the eggs are set at once. In operating the three-stack incubator, all the eggs are not set at the same time, but one stack at one time and the others at successive intervals, so that the eggs in the same chamber are in varying stages of incubation.

Defendant's device does not have a fan to create air currents and circulate them through the stacks of eggs. It does not have a corridor separated from the stack of eggs by partitions with openings under or over the same between the corridor and the egg chambers. It does not drive or force air over heated coils downward through the central corridor and up through the column of egg trays. It has all stacks of eggs in the same chamber, not in chambers separated one from the other by partitions and corridors. The incubator is equipped with a pulley driven shaft disposed axially through the chamber and egg stacks. On this shaft are wired boards 40 inches long and 4 inches wide. One of these boards is placed at each end and one between each stack of eggs. The boards are disposed at right angles to each other, said by defendant to be merely for the purpose of properly balancing their weight. The shaft is driven at a moderate rate of speed, so that the outward tips of the revolving boards move only at the rate of 2,000 feet a minute, whereas the outward tips of the fan blades of plaintiffs' 18-inch fans revolve at a rate of more than 11,000 feet a minute. The paddles of defendant's device revolve at right angles to the shaft, and are not disposed at an angle to the egg stacks, so that the air is not driven laterally against the eggs, whereas the fan blades of plaintiffs' device are disposed at the usual angle appropriate to drive air in a current on the principle of a forced draft. These are the main differences in construction and principle of operation between the two devices.

It is defendant's contention that currents of air, as that term is and must be understood in claim 1, are not found in his method. Defendant's device was operated under my observation at this hearing. Undoubtedly the air within the incubator chamber is in commotion. It is not at rest in any part of the chamber. Obviously, as the paddles revolve, the air in front of them is compressed, and an area of lower pressure is produced behind them. The most direct effect is to drive the air against the sides and top and bottom of the chamber as well as to draw it towards the areas of low pressure. It may be accurately described as a stirring and churning operation. It agitates the air, but does not drive or force it in any uniform or ascertainable direction. If adequate uniformity of temperature is obtained, it is accomplished only in

this manner. In this sense and manner only can it be said that heat units are carried from eggs in the advanced to eggs in a less advanced stage of incubation. If claim 1 calls for a current of air forcibly created and driven against the eggs in any definite or ascertainable manner or direction, then defendant's device does not appropriate that step. It is not capable of creating or directing such a current or functioning in accordance with that principle.

These considerations bring us to the crucial question: What is meant in claim 1 by the term "applying a current of heated air"? This meaning must be extracted from the ordinary and usual meaning of the words employed, unless, indeed, the patent specifications or the Patent Office proceedings have affixed thereto another and different meaning. In New Standard Dictionary, "current" is defined as "a continuous movement in the same direction, as of a fluid; flow; stream; also the fluid that is in motion; as a current of air or water." As thus defined, Smith's method produces and applies a current. If this definition is accepted, it must be found that defendant's method does not meet its requirements. There is no continuous movement of air in the same direction, or in any definite or ascertainable direction. It is air in commotion or agitation rather than air in movement in a given direction.

Turning to the specifications, we find this definition or meaning more strongly emphasized. It is said: "There is a forced circulation of hot air through the chamber." It is pointed out that the eggs will be placed in a horizontal plane, "and after the eggs have been subjected to the circulation of hot air for a predetermined time * * * they will be moved to a different position with reference to the forced circulation of hot air." The purpose is to force hot air to pass through the eggs in the more advanced stage of incubation and act on them as a cooling medium and carry the heat units therefrom toward the cooler eggs. It is further said: "The speed or velocity of the circulating air should be such as to carry the heat away from the eggs in the later stage of incubation." And still further: "The method contemplates the application of hot air circulating in a column with such speed as to keep the temperature substantially uniform and so arranging the eggs that the fresh eggs are placed at one point in the column of air and held in a horizontal plane until they reach a predetermined stage of incubation, and then put at a different point in the same column

of air and kept in planes inclined to the horizontal, and thereafter placed at such a point in the column of air that the forced draft of air acts to hold the eggs at a uniform temperature."

Thus we see that Smith himself affixed a meaning to the words "applying a current of heated air." The various expressions used are "a forced circulation of hot air," or "speed or velocity of the circulating air," or "a column of air," or "a column of eggs." In brief, the eggs are put in a column, the air is forced and circulated in a column through those eggs, and is applied first to eggs in an advanced stage of incubation, and later to those in a less advanced stage. In defendant's method there is no forced circulation of hot air; much less is there any column of hot air, with eggs disposed therein in different stages of incubation. In my opinion, it is not possible to procure either a current or column of heated air, functioning in the way pointed out in Smith's patent, without means for creating a forced draft, and without means for restricting more or less the channels through which it is driven. Smith's method cannot be practiced without these means.

Turning to the file wrapper history of Smith's patent, we find these conclusions much strengthened. His application, as originally filed, contained four method claims. Claim 1 thereof was in these words: "The method of hatching eggs by arranging the eggs in a column and applying heated air forced about the eggs, the heated air being adapted to the eggs in various stages of incubation." This, as well as the other three method claims, was rejected. It was then amended by inserting after the word "column" the words "of various stages of incubation" and by striking out the word "forced" and inserting the word "impelled."

After repeated rejections of all method claims, new method claims were again submitted. Of these, claim 2 is in these words: "The method of hatching eggs by arranging in one chamber eggs in various stages of incubation, the eggs in different stages of incubation being in different parts of said chamber, and applying heated air driven at a predetermined speed or velocity about all the eggs whereby the heated air will be adapted to eggs in various stages of incubation." This amended claim, as well as all other amended method claims, was again rejected. Later, after an oral hearing and the submission of evidence, the more limited claims now in the patent were presented and allowed.

At the time of this hearing, the Smith incubator had been on the market for some time and was enjoying a substantial sale. This success was strongly emphasized. It may also be fairly inferred that its structural details and method of operation were made known to and fully understood by the Examiner.

These rejections and Smith's acquiescence are not without substantial weight. Even if it can be said that no definite limitation is thereby imposed, they certainly furnish light in determining what method or series of steps are defined in claim 1. If claim 1, as originally presented, had been allowed, Smith might claim the construction now asserted, but perhaps at the risk of validity. If amended claim 2 had been allowed, Smith would be entitled to the construction now contended for, except only for the limitation of "a predetermined speed or velocity." In the claim first submitted, he was seeking a claim covering eggs arranged in a column in various stages of incubation, with merely heated air forced or impelled about the eggs. In the later claim, he was seeking to cover eggs in one chamber in various stages of incubation, with heated air driven about all the eggs, plus a predetermined speed or velocity for the air. These claims were all rejected by the Examiner, either because they were anticipated by the prior art or because they covered more than Smith had actually discovered or invented. He acquiesced in that rejection and accepted narrower claims.

Smith is not now entitled to have a construction which covers merely eggs in different stages of incubation in one chamber, with heated air applied to or forced about them. He made an effort to get claims broad enough to admit of this construction, and failed. He acquiesced in that rejection and accepted claims which called for the application of a current of air. This expression, whether we consider merely its normal meaning, or whether we determine its meaning from the disclosures of the specifications, or whether we determine the same from these repeated Patent Office rejections, must be held limited to a method which calls for the creation and driving by force of a current of air in some more or less definite or predetermined direction through a column of eggs arranged in an order which presents first to the current those in the most advanced stage. In my opinion, defendant has not appropriated this element or step of claim 1, and is not guilty of infringement.

This conclusion finds support in my previous opinion, as well as in the opinions of other judges who have had occasion to examine the art and consider Smith's patent. In Buckeye Incubator Co. v. Wolf (D. C.) 291 F. 255, describing Smith's hatching method, I used this language: "The principle of operation and the hatching method for which this apparatus is designed consist in forcing mechanically a draft of heated air downwardly through the central corridor, where it passes below the bottom of the partition or curtains and ascends through the column of egg trays to the exit at the top of the respective egg chambers. Part of the foul air is permitted to escape through the air exits, and additional fresh air is drawn in through the air inlets and returned through the central corridor and the egg chambers. A cycle of forced circulation of air through definite channels, it is said, is thereby obtained." As already said, I should not feel bound thereby, if my present opinion were otherwise, for the reason that no question of infringement or validity turned on any close construction of the patent claims. However, this language was not used inadvisedly.

In Buckeye Incubator Co. v. Petersime, District Judge Hickenlooper had occasion to consider closely the construction of these patent claims, and held that they were not infringed by a device or hatching method similar in its principle of operation to defendant's. That case is now pending on appeal.

In Buckeye Incubator Co. v. Cooley, supra, Judge Woolley, in discussing the prior art, uses this language: "More important still, there was no arrangement for establishing and regulating currents of heated air and, similarly, no provision for obtaining uniformity of temperature other than that initially provided by the heating means. Moreover it should be noted that the heated air, like the wind, would go where it listeth, and, accordingly, it acted as it pleased." In the present case, at the hearing and before seeing Judge Woolley's opinion, a similar expression was used by me in describing the operation of defendant's apparatus. Judge Woolley, in describing Smith's hatching method, uses this language: "He, too, set eggs in trays arranged in tiers and inclosed them in a chamber, and he also provided artificially heated air by a motor driven fan positioned at the top of the chamber, but he established an air current and regulated its direction by arranging the tiers of trays in two columns parallel with and separated from each other so as to form between them a central corridor, and placed partitions or curtains from the top to a short distance from the bottom of the tiers and directed the air current downwardly, not

through the eggs, but through the corridor where it mushroomed on the floor, spread beneath the tiers, ascended through the egg trays and escaped through definitely arranged air outlets. By so controlling the current of heated air Smith claims, and we think correctly, that he is enabled to attain uniformity of temperature in its movement."

Even if all these expressions were used in a situation not requiring an exact determination of Smith's method or the scope of his claims, they are still not without substantial weight. That three different tribunals in different situations should be so impressed, is strong evidence of the soundness of my present conclusion. In the first case, the evidence created more than a doubt in my mind that eggs could be hatched efficiently and commercially with an apparatus like defendant's. I still think that defendant's has many limitations and disadvantages. Be that, however, as it may, its method is not Smith's invention, nor the method called for by the words in claim 1, "applying a current of air." Even if Smith's invention is one of great merit, and his patent claims entitled to a liberal range of equivalents, it is not permissible to give those claims a construction broad enough to include a method which does not use or apply his current of air.

For the foregoing reasons, plaintiffs' bill will be dismissed, at their costs.