## WERDER et al. v. CONTINENTAL CAN CO.

No. 5444.

District Court, N. D. Ohio, E. D.

July 9, 1937.

Thompson, Hine & Flory, of Cleveland, Ohio, for plaintiffs.

Mason & Porter, of Washington, D. C., and Oberlin, Limbach & Day, of Cleveland, Ohio, for defendant.

WEST, District Judge.

Suit for infringement of two patents to John F. Werder, 1,762,903, for a self-dispensing liquid package, to wit, a can for

holding and dispensing liquid, particularly lubricating oil, containing an absorbed gas dispensed by the gas pressure in a small jet. The specification states that the article may also be used in other circumstances where storage and dispensing of small quantities of various liquids is desired. The can is formed of a cylindrical body to which the ends are joined by soldering and seaming. Through the top a vertical discharge pipe extends substantially to the bottom of the can. To the upper end of this pipe a valve body is attached, within which a screw valve stem operates to open and close a valve for controlling the discharge by gas pressure of the contents of the can through a lateral nozzle communicating with the discharge pipe. The specification states that the discharge pipe may be omitted, in which case the can is employed in an inverted position. But in that case the valve and nozzle are still required. The patent recites, p. 3, lines 98-103:

"This receptacle may likewise be used to store and dispense insecticides, etc., containing an absorbed gas. It presents a cheaply constructible article which may be sold with its contents as a package, and, when emptied, may be discarded."

"The pressure therefore varies in a filled can between 50 to 75 lbs. in practice according to the prevailing temperatures." p. 3, lines 3-5.

When the can is nearly empty and the pressure fallen to 20 or 25 pounds, it is still sufficient to "deliver the last drops to a considerable projective distance from the nozzle". p. 3, lines 40-44.

The specification recites much that is irrelevant respecting methods of construction, of filling the can, etc., not necessary to recite. The foregoing shows what the article is, how it operates, and what it accomplishes.

Claim 10 is the only one sued on. It recites:

"As an article of manufacture, a package comprising a thin sheet metal can consisting of body and ends, and having only crimped and soldered seams and joints, said can containing a liquid charged with an absorbed gas to such a degree as to produce at normal temperatures an internal pressure of approximately fifty pounds to the square inch, a discharge nozzle communicating with the interior of the can and mounted on one of its ends, and a manually operated valve controlling said nozzle."

■ The defendant makes and sells to the brewing trade a can of thin sheet metal for containing and dispensing approximately a pint of beer. Defendant's can lacks the discharge nozzle and the manually operated valve controlling said nozzle, both essential elements of the above claim. Plaintiffs contend that Werder is a pioneer in the field of sheet metal containers for holding liquids such as beer under gas pressure, and of such cheap construction that they can be profitably discarded after single use; and that the patent is entitled to the broadest construction. Were that true, it may be that the pouring opening in the top of defendant's can could be brought within the dictionary definition of a nozzle, but such construction will not bring the crown cap which seals the can within the meaning of plaintiffs' "manually operated valve".

Webster's New International Dictionary defines "valve" as employed in machines, thus:

"Any of numerous devices by which the flow of liquid, air or other gas, loose material in bulk, etc. may be started, stopped, or regulated by a movable part which opens, shuts, or partially obstructs one or more ports or passageways; also the movable part of such a device."

■ This applies to the valve illustrated in the patent drawings, but not to defendant's closure cap. True, when the cap is removed, flow of the beer is started, but said cap is not a movable part, as the definition requires. It is neither made nor applied by defendant, but is furnished and applied by the brewer, the defendant's customer. Assuming it to be a part of defendant's can notwithstanding, it is detachable rather than movable; and detachment distorts and makes it unfit for further use. Even if the cap and spout constitute a valve and nozzle within the dictionary definition, still they are not equivalents of the devices of the patent, as they do not perform the offices of those elements in substantially the way such functions are performed by the valve and nozzle of the patent.

■ "If appellant's patent is a pioneer patent, it is entitled to hold as infringements all known equivalents of the elements of the claims which perform the

same office in substantially the same way." Smith Corp. v. Lincoln Elec. Co., 6 Cir., 82 F.2d 226, at page 227.

The spout or nozzle can be used only for pouring and not for projecting a restricted stream or jet for any substantial distance. Nor can the cap, considered as a valve, stop or regulate the flow of the beer from the can. Even the broad construction of these terms for which plaintiffs contend, will not include the cap and opening of the can Exhibit 5, which does not infringe.

Claim 10 is invalid. The patent to Tibbals, 1,214,971, issued in 1917 for a fire extinguisher, may not completely anticipate it, for Tibbals' nozzle terminates in an enlargement and probably does not function precisely as Werder's. But no more than mechanical skill would be required to change the nozzle to the form shown in the patent in suit, which, if construed to cover the can alone, discloses no invention over Tibbals. As stated in defendant's brief—

"It is possible that the liquid used in the Tibbals receptacle does not absorb the gas or air, but it was not novel to provide a liquid with an absorbed gas wherein the gas is the motive power that forces the liquid from the receptacle. This is disclosed in the patent to LeMay, 1,044,868".

Consequently if the claim is for the receptacle and its charged contents, infringement is equally absent. Carbice Corp. of America v. American Patents Dev. Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819.

In Tibbals the gas pressure expels all the liquid from the receptacle. His patent was not considered by the Examiner. That it was for a fire extinguisher is of no moment in view of the statement found in the patent in suit that the Werder can may be used "to store and dispense insecticides, etc. containing an absorbed gas". And in Werder's method patent in suit he speaks of the ability of his improved can to project a stream of liquid when the can "is employed for containing lubricating oil, paints, fire-extinguishing compounds, and the like".

Certain method claims of patent 1,788,261 to Werder are also involved in the present proceeding. Assuming it to be valid, neither of claims 3, 8 or 12 relied on, are infringed by the defendant.

These claims read:

"3. The method of making a sheet metal can having seams capable of withstanding fluid pressure which comprises forming a can body with the usual crimped longitudinal seam, expanding the body so as to stretch and partially open said crimped seam, thus decreasing the leverage with which stresses act upon said seam, and then applying solder along said partially opened seam to securely seal the same."

"8. The method of making a sheet metal can having seams capable of withstanding fluid pressure which comprises forming a can body with the usual crimped longitudinal seam having the metal sharply bent adjacent thereto, expanding the body so as to stretch said seam transversely and thus partially straighten out the bend in the metal, and then applying solder along the outside of the seam, said straightening of the metal serving to reduce the tearing action on the solder, whereby the parts are securely held against further yielding."

"12. The method of forming a cap capable of resisting high internal pressures which consists in forming a cylindrical can body, securing to said body flat sealing heads with annular corrugations or depressions, whereby the assembly has recessed ends and can be passed through the guides of the usual can making machines, and thereafter subjecting the assembly to an internal pressure sufficient to cause a bulging and permanent deformation of the ends of the can by the yielding of the corrugations."

The first two are directed to the method of making a sheet metal can having what the patent terms "the usual crimped longitudinal seam", and it is to the method of producing this seam that the dispute relates so far as these claims are concerned. A feature or step in the method of both claims is expanding the can body so as to stretch and partially open said seam, or so as to partially straighten out the bend in the metal, prior to applying solder to the seam. The effect of this operation when performed so as not to damage the seam, is admittedly to strengthen it. Werder accomplishes the expansion by injecting pressure into his can body after the longitudinal seam of the body and the seams fastening the ends to the body, are formed, but as stated, prior to

the application of solder to the side or longitudinal body seam.

Defendant accomplishes practically the same result of strengthening, not all but a section of its longitudinal or side seam. It does this not by expanding the can by internal pressure, as called for in the claims and shown in the specification of the patent in suit, but by forming this central section over a spline so shaped that when the seam is "bumped" or hammered down on the horn of the can making machine, one side of the metal adjacent the seam is given a shape which, as stated in claim 3 of the patent, decreases the leverage with which stresses act upon the seam at that point.

Thus, without expanding the body or partially disrupting the seam after it is made, the defendant reaches the same result in respect of the central section of its seam by a method entirely different from Werder's. The expansion step is vital and essential to Werder's claims 3 and 8, and the defendant's operation is so entirely different in every respect except as to result, that it is not the equivalent of Werder's.

"But infringement of a process patent, is absent from a process which does not proceed with substantially the same mode of operation as that of the process described and claimed in the patent." Walker, Sec. 399.

Royer v. Coupe, 146 U.S. 524, 530, 531, 13 S.Ct. 166, 169, 36 L.Ed. 1073, quotes with approval from Royer v. Chicago Mfg. Co., C.C., 20 F. 853:

"If this is a valid patent for a process, it must be limited to the precise, or, certainly, substantial, description which has been given in the specifications; and in order to constitute an infringement of that process a person must be shown to have followed substantially the same process, the same mode of reaching the result as is described in the specifications."

Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 569, 18 S.Ct. 707, 723, 42 L.Ed. 1136:

"But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value."

The head-note in White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303, reads:

"The claim of the inventor in letters-patent must be construed according to its terms; and when its import is plain, resort cannot be had to the context for the purpose of enlarging it."

And, 119 U.S. at page 51, 7 S.Ct. at page 74, 30 L.Ed. 303:

"We see nothing in all this to raise the slightest implication that the patentees were the inventors of the process of interposing any and every kind of lining between the cans and their contents, and, when their claim is confined to a lining of textile fabric, it is tantamount to a declaration that they claimed nothing else."

And then follows the famous statement:

"Some persons seem to suppose that a claim in a patent is like a nose of wax", etc.

"But, where claims are clearly and unmistakably specific in their terms, they are not infringed by the use of different means in a machine or by different steps in a method as is the case here." Blumenthal & Co. v. Salt's Textile Mfg. Co., D.C., 21 F.2d 470, 471, 477.

Buckeye Incubator Co. et al. v. Blum, D.C., 17 F.2d 456, at page 458:

"In construing a method or process claim, and in determining whether it is infringed, or not, the same rules are applied as with an apparatus claim. The steps or sequences of operation of the former are regarded as the equivalent of the elements of the latter. If any of the essential steps of the process are omitted, the effect upon infringement is the same as the elimination of an element. If something is introduced to take the place of the omitted step, then the question of equivalency arises and must be determined by like rules. See Philadelphia Rubber Works Co. v. Portage Rubber Co. (6 C.C.A.) 241 F. 108."

The head-note in Philadelphia Rubber Works Co. v. Portage Rubber, Co., supra, reads:

"The rule applicable to mechanical patents for combinations also applies to process patents, and unless a defendant uses

538

all the steps in the process, or an equivalent therefor, he does not infringe.

"Identity of product does not establish infringement, unless it is obtained by substantially identical means or method." Robeson Process Co. v. Robeson, 3 Cir., 293 F. 70.

"Test of infringement of process patent is not identity of product, which is not patented, but identity of patented process in producing unpatented product." General Chemical Co. v. Aluminum Co., D.C., 11 F.2d 810.

No valid reason exists for construing Werder's operation of expanding his can body so that it shall cover and include the method by which the defendant has reached Werder's result, especially in view of the admission of Mr. Rogers, one of the plaintiffs, that plaintiffs have discarded the side seam to which the method of this patent is directed, and now use the "lap seam" where two overlapping edges are soldered. Rec. 55, 56.

The 12th claim of this patent is not infringed, as it calls for subjecting the Werder can "to an internal pressure sufficient to cause a bulging and permanent deformation of the ends of the can by the yielding of the corrugations". This also is an essential step in the method of manufacture of the Werder can, but is not used by defendant. After defendant's can is filled with beer, some pressure is exerted upon the ends, but this is not shown to be sufficient to bulge or permanently deform them. It is not contended that the top is bulged in any degree. If there were such deformation of the bottom end, it would not result from defendant's method of manufacture, but rather from the amount of gas in the beer with which the can is filled by the brewer.

It seems unnecessary to decide whether defendant's counsel are correct in their view that the prior art, especially the Ross patent 941,729, and the wide side seams which defendant has used in certain types of cans for many years and which it says have the characteristics of the mid-section of its beer can seam, only less pronounced, so limits claims 3 and 8 that, in order to save them, it must be held that they are not infringed; or to consider the effect which Shaffer No. 1,215,724 may have upon the construction of claim 12.

The bill will be dismissed at the costs of the plaintiffs.