## BAUER BROS. CO. v. BOGALUSA PAPER CO. *
### No. 8454.

Circuit Court of Appeals, Fifth Circuit.
May 26, 1938.

*Rehearing denied 97 F.2d 732.

the art, of grinding billets of wood against a revolving stone in the presence of water to form the gelatinous mass of wood fibers and water which is the material from which the finished product is manufactured. It states the problem of manufacturing this pulp from edgings, shavings, saw dust, and waste products in mills which are incapable of being held against a grind stone, and mentions the great saving to be effected by its solution. It proposes to solve the problem by shredding and comminuting the material by the use of hogs or shredders; then soaking it in water until saturated; and finally crushing and rolling it under pressure, in the presence of water, between high speed rotating disks with peripheral edges separated only by a few thousandths of an inch.

The patent concedes the prior use and devèlopment of the machines necessary to carry out the process, but, relying upon a particular combination or combinations of these machines, and specifications as to the mode and condition of their operation, claims invention for the method or process of operation. The claims of the patent, five in number, may be composed to read as follows: I claim the method of producing pulp from wood, chips, or other fibrous material which consists first in reducing the material to a comminuted state; second, impregnating the material with water, either hot or cold; and third, subjecting the material, while wet and in the presence of water, to a rolling and crushing action between oppositely and concentrically rotating metal disks or plates having a high peripheral speed and held in very close proximity to each other by high pressure whereby the material will be heated, hydrated, rolled, squeezed, and separated into fibers or filaments.

The Brennan & Hussey patent is number 1,713,593, and was issued on a feeding device for use with disk-grinding or attrition mills such as are used in performing the last step in the process described in patent number 1,711,706. The device consists of a casing to receive the material, in which a rotating member with projections is mounted to provide a regular flow of material as the member rotates, and having a pipe or nozzle mounted in a recess in the casing so that water may be introduced without obstructing the flow of material.

Paper, like wood, consists principally of cellulose. In the manufacture of paper,

Marston Allen, of Cincinnati, Ohio, for appellant.

Greer Marechal, of Dayton, Ohio, J. B. Hayward, of New York City; and Nicholas Callan, of New Orleans, La., for appellee.

Before SIBLEY, and HOLMES, Circuit Judges, and MIZE, District Judge.

HOLMES, Circuit Judge.

This appeal is from a decree dismissing a bill in equity which alleged the infringement of two patents. The first was issued to Howard F. Weiss, the second to Brennan & Hussey; both were assigned to appellant, who brought this suit seeking an injunction and accounting.

The Weiss patent is number 1,711,706 and is upon a method or process of making wood pulp such ·as is used in the manufacture of paper, box board, and. wall board. It recites the practice, long followed in

the raw material, whether it be wood, rags, waste paper, or other fibrous material, must be comminuted to the extent that the fibers are either separated or broken down into bundles so small that they may interlace with other fibers piled across and parallel thereto, and still compress and dry out to a thickness no greater than the desired sheet. Cellulose is a carbohydrate in which the carbon and water are united in the same proportion as in starch, the difference being in the structure of the molecules. In the paper-making art, comminuted particles are soaked in and impregnated with water. Some methods employ chemicals in the comminuting and impregnating process, while others rely entirely upon physical means; but in either case, in order to be successful, the pulp must be brought to a state where it is a sticky gelatinous mass. This mass has some of the physical characteristics of starch; but since the colloidal state is reached only when the pulp is associated with water, and the proportion of water would not be changed in starch, it is not known whether other chemical compounds are formed or the change is characteristic of the material itself. The chemistry of colloids does not disclose whether a new compound is formed by a rearrangement of the atoms in a new molecular structure in which additional molecules of water become links in the chain, or whether the interaction of the water with the pulp material is merely physical. In the testimony in this case, this association or combination of the pulp material with water is spoken of as hydration. While the term may not be scientifically accurate, its use in that sense is adequate for this case; and it may be construed as so used in the patent.

It must be noted that in preparing the pulp for making paper, the breaking down or separation desired relates to the fibers, and not to the cells or cell structure of which the fibers are composed, nor to a reduction in the size of the fiber itself. Additional separation would amount to a destruction of the material in so far as its use for paper making is concerned. Thus, in chemical processes there is a great waste due to the loss of the less resistant fibers, while in woods made of greatly varying alternating structures chemicals fail entirely for all practical purposes. In treating wood mechanically, the grindstone method of comminuting the material referred to in the patent was wasteful, because it cut or broke a large portion of the fibers rather than separated them into bundles or individual fibers. It is undoubtedly true that some fibers are destroyed in every operation where the structures are separated.

In describing the method by which he undertakes the solution of the problem, the patentee points out that the first step, of reducing the material to small pieces, may be accomplished by the use of any one of a number of well known devices already in use. For saturation or impregnation, he prescribes that the materials be thrown into tanks of water and left to soak until they sink, or that saturation may be accelerated by the use of hot water, steam, or pressure tanks. The machine for rolling and crushing the comminuted and impregnated material is a well known attrition mill described as two slightly concave disks so mounted that their concavities are adjacent, leaving a larger space between them near their centers than at their peripheries, to rotate on the same axis in parallel planes, but in opposite directions, with a preferred peripheral speed of about 12,000 feet per minute. The disks so constructed and operated are inclosed within a case into which the material is fed at one side and through the center of one of the disks. It is there caught by the centrifugal force of the rapidly rotating disks and forced between them. These disks have serrations or grooves run in a radial direction. As the material is caught between them it is progressively broken into small bits by the action of the grooves striking against it as it moves outwardly from the center of the disks through the narrowing opening between them. Much was made of the fact that, as a particle of material passes longitudinally through the grooves, the speed of that portion of the disks adjacent to the outer end of the particle is greater than that of the portion of the disks adjacent to the inner end, whereby the rolling resulting from the particle being caught between the two rotating surfaces is greater at one end than at the other. Appellant contends that this action causes the outer ends to be frayed and the split or separation to be carried through to the inner end of the particle. However, in practice, it is doubtful if this characteristic is of any importance, since the length of the particle is so small in comparison to the radius of the disk that the differential thus obtained is negligible. At any rate, if it plays any part in the process, it is a characteristic of other machines well known to the art prior to the invention

claimed in the patent,[1] and is a function or result of the mechanical device or structure. The rolling, crushing action specified in the patent is obtained by passing the particle between the serrated faces of oppositely rotating disks so that the bundles of fibers are pulled, mashed, and torn apart without being cut. It is conceded that hydration occurs wherever wood is immersed in water, and that the process is hastened by any agitation of the mixture and accelerated even more where the wood itself is subjected to alternate or intermittent stresses and strains tending to displace the fibers. Thus the presence of water in the attrition mill while the rolling and crushing is in progress greatly accelerates the process of hydration.

Many patents are introduced as illustrative of the prior art bearing on the process covered by the patent in suit. Most of these patents are for machines designed to perform the functions necessary to the practice of the process. It is conceded that these patents do not anticipate the patent in suit, since a patent on a machine necessary or useful in performing one of the steps does not anticipate the process. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698. 46 L.Ed. 968. However, they disclose that the operations performed by the machine are old in the art of papermaking. When the process is analyzed it is found that nothing is added to any basic operation, with the possible exception of the size, shape, and arrangement of the serrations on the grinding faces of the double-disk attrition mills. As to these, double-disk mills had been in use long prior to the beginning of experiments by the patentee, and plates or faces of the approved type were already manufactured when he desired to use them experimentally. Such changes in the plates or faces as were necessary are not taught by the patent, as they need not be, since it is the process and not the machine for which protection is sought.

While confusion may result from analogous functions and results, process or method patents present essentially the same problems and involve the application of the same principles of law as patents on machines or apparatus. In the one instance it is the manner of doing which amounts to invention, while in the other it is the instrumentality by which the thing is done. In either instance, the protection afforded and the rules for its ascertainment and determination are the same. Buckeye Incubator Co. v. Blum, D.C., 17 F.2d 456.

The process here involved is made up of three or four steps or elements similar to the component parts of a machine. Loosely stated, they are comminuting, water soaking or impregnation, rolling and crushing to separate fibers, and hydration. It is well settled as to machines that to be patentable a combination of old elements must result in such co-action or modification that a result is reached which is more than the mere sum of the action of all the elements; otherwise the union is a mere aggregation. Adams v. Bellaire Stamping Co., 141 U.S. 539, 12 S.Ct. 66, 35 L.Ed. 849; Beecher Manufacturing Co. v. Atwater Manufacturing Co., 114 U.S. 523, 5 S.Ct. 1007, 29 L.Ed. 232; Mettler v. Peabody Engineering Corp., 9 Cir., 77 F.2d 56. This is true even though the combination be not wanting in novelty. Burt v. Evory, 133 U.S. 349, 10 S.Ct. 394, 33 L.Ed. 647; Florsheim v. Schilling, 137 U.S. 64, 11 S.Ct. 20, 34 L.Ed. 574; City of St. Louis v. Prendergast, 8 Cir., 29 F.2d 188.

Applying this rule, it does not appear that the combination of comminuting and soaking or impregnating with water as practiced under the patent adds anything to either of these steps or produces any new result. Combining the sum of these two operations with the rolling and crushing operation in the presence of water is the only remaining step in which invention may reside, unless it be in the rolling and crushing in the presence of water as a combination within itself. A patent is not claimed for the rolling and crushing action of the double-disk attrition mill, since rolling and crushing is a function of the machine and is not patentable. Risdon Iron & Locomotive Works v. Medart, 158 U.S. 68, 15 S.Ct. 745, 39 L.Ed. 899. In this case, at 158 U.S. 78, 15 S.Ct. 749, the court quotes from Corning v. Burden, 15 How. 252, 14 L.Ed. 683, as follows: "But the term 'process' is often used in a more vague sense, in which it cannot be the subject of a patent. Thus we say that a board is undergoing the process of being planed;

---

[1] Jordan machines, made up of a rotating element in the shape of a cone, rotating on its axis within a closely fitting stationary element, both provided with so-called serrations.

995

grain of being ground; iron, of being hammered or rolled. Here the term is used subjectively or passively, as applied to the machinery operated on, and not to the method or mode of producing that operation, which is by mechanical means, and the use of a machine, as distinguished from a process. In this use of the term it represents the function of a machine, or the effect produced by it on the material subjected to the action of the machine. But it is well settled that a man cannot have a patent for the function or abstract effect of the machine, but only for the machine which produces it." See also Black Clawson Co. v. Centrifugal Engineering & Patents Corporation, 6 Cir., 83 F.2d 116.

The patent itself cites the practice of grinding in the presence of water as being the customary method of comminuting the material. The result of the rolling and crushing is the separation of fibers or bundles of fibers, and the practice of performing this function in the presence of water is as old as the art of woodpulp production. Thus the addition of water to the rolling and crushing of the attrition mill is simply the adaption of the function of the mill to a process old in the art. If it be granted that the interaction of elements necessary to distinguish a combination from an aggregation results from the concurrence of the two, the combination is lacking in novelty and not entitled to patent monopoly. If it be argued that novelty resides in combining the peculiar function of the attrition mill, i. e., rolling and crushing, with the presence of water, the answer is that comminuting the material in the presence of water is as obvious to the pulpmaking art as in the art of making brick or mixing concrete. It is obvious to those skilled in the art. It teaches nothing new. Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Pennington v. National Supply Co., 5 Cir., 95 F.2d 291.

There remains only the consideration of the sum of the combination of comminuting and soaking with the rolling and crushing in the presence of water. Here again we have no new mode of operation, and no result is accomplished aside from the sum of the elements thus brought together.

As in a machine comprising an aggregation of old elements, each performs its function in the same manner and with the same results as when acting alone or in any of the old combinations known to the art. Under the rule announced above, this does not amount to a patentable combination, but to a mere aggregation. See authorities supra, also Philadelphia Rubber Works Co. v. Portage Rubber Co., 6 Cir., 241 F. 108.

It is interesting to note that, as the patentee under number 1,711,706 went about his scientific study of the structure of wood and its responses to various stresses and strains, he found machines already manufactured with which to test his theories and demonstrate his discoveries. With the aid of the knowledge thus obtained, he was able to assemble these machines into the aggregation described, but this does not prove invention. He may have contributed to the useful knowledge bearing on the art, but even this does not prove novelty within the patent laws, since he was merely explaining phenomena familiar to the art. Indeed some of the greatest contributions of useful knowledge are outside the operation of patent laws, since they do not amount to invention or discovery of any art, machine, manufacture, or composition of matter. In the language of the patent law, a process is an art. Cochrane v. Deener, 94 U.S. 780, 788, 24 L.Ed. 139.

As to Patent number 1,713,593, it is conceded that feeding-devices with the basic structure shown are old in the art. The claim which appellee is charged with infringing relates to the structural feature whereby the water is introduced from a recess in the wall or sides of the device, thereby dispensing with protuding pipes or nozzles for this purpose. Such a structure is a mere mechanical improvement, obvious to any one skilled in the art. Moreover, it is clearly shown in Patent number 959,062, issued to G. Komerek for a mixing machine. As to the claims which it is alleged are infringed, they are invalid because obvious and anticipated.

The district court committed no error, and its decree is

Affirmed.