TURBO MACHINE COMPANY
and
Alba-Waldensian, Inc.
v.
PROCTOR & SCHWARTZ, INC.
and
Proctor Hydro-Set Company, Appellants.
No. 15422.

United States Court of Appeals
Third Circuit.

Argued Dec. 17, 1965.
Decided May 11, 1966.

Leon Edelson, Charles H. Howson, Jr., Philadelphia, Pa., for appellants.

Robert B. Frailey, Philadelphia, Pa. (Henry N. Paul, Jr., Stuart S. Bowie, Philadelphia, Pa., Paul & Paul, Philadelphia, Pa., on the brief), for appellees.

Before McLAUGHLIN, HASTIE and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

█ As plaintiff in the court below, appellee, Turbo Machine Co., sought a

declaratory adjudication that the claims of Bailey Patent No. 3,022,926, now owned by the defendant Proctor & Schwartz, Inc.,[1] are neither valid nor infringed by an apparatus manufactured by the plaintiff and marketed under the name "Turbo Dye Boarder". At the trial the defendant conceded that no Bailey claims other than claims 1, 2 and 3 were infringed by Turbo. After a full hearing the district court decided that all claims of the Bailey patent were valid and that none of them were infringed by the plaintiff's apparatus. E.D.Pa.1965, 241 F.Supp. 723. From this judgment the defendants have appealed.

The invention claimed by Bailey is a new method of dyeing women's stockings and setting them to predetermined shape. The district court properly observed that "[c]laim 1 of the [Bailey] patent is representative, the remaining claims merely adding steps which do not affect the basic invention". 241 F.Supp. at 724–725. That claim reads as follows:

"1. In the method of setting and dyeing textile articles made of synthetic thermoplastic yarns capable of being heat-set to predetermined shape and dyed at temperatures within the range of 212° F. to 330° F., the steps which comprise (1) mounting said articles on boards conforming to said predetermined shape, (2) introducing said boarded articles into a treatment zone closed to room atmosphere and containing steam under superatmospheric pressure at a temperature between 212° F. to 330° F., (3) maintaining the boarded articles in said treatment zone at least until said articles are heat-set to said predetermined shape, (4) dyeing said boarded articles while in said treatment zone with a hot liquid dyeing medium capable of dyeing the synthetic thermoplastic yarns until said boarded articles are dyed to the desired color and (5) maintaining substantially constant said steam conditions throughout said treatment zone during setting and dyeing of the boarded articles therein so that said boarded articles are continuously subjected to substantially uniform temperature while in said zone." (Numerals inserted.)

Admittedly, the heat setting of stockings to a predetermined shape while mounted on boards conforming to that shape was familiar in the art and the subject of various patents before Bailey. Indeed, no single step taught by the Bailey patent was new. The trial court found that Bailey's inventive discovery was a method for accomplishing both the setting and the dyeing of articles in a single closed treatment zone containing steam maintained at substantially constant temperature and pressure throughout the process.

Whether this improvement upon the teaching of the prior art amounted to invention, as the district court found, we do not decide.[2] However, it is clear that the claimed invention can be no broader than the district court has found it to be. For, except for the maintenance of uniform temperature throughout the period of setting and dyeing and the alleged "concurrence" of these two operations, there is nothing even arguably new and inventive in Bailey. The setting of nylon fabrics on forms by steam under superatmospheric pressure in a closed treatment zone had been taught by several patents. Miles Patent No. 2,157,119; Oswald Patent No. 2,351,063; Wardle & Davenport British Patent No. 596,330. Dyeing and treating fabrics, including nylon, under steam at high temperatures is also old in the art. Walter Patent No. 2,387,200; Krosnowski British Patent No. 26,097. The same is true of dyeing and treating on forms. Ziock Patent No. 1,623,080; Schuster British Patent No.

---

1. The co-defendant, Proctor Hydro-Set Co., is a Proctor subsidiary and the exclusive licensee under the Bailey patent. The co-plaintiff, Alba Waldensian, Inc., is a customer of Turbo Machine Co.

2. Turbo did not appeal from the decision that the Bailey patent is valid. Decision on the infringement issue is fully dispositive of the present appeal.

451,261. Thus, if the Bailey patent taught merely dyeing and heat setting boarded nylon stockings on forms in a closed treatment chamber, the alleged invention would be no more than an unpatentable aggregation of old elements. Cf. Park-In-Theatres, Inc., v. Perkins, 9th Cir., 1951, 190 F.2d 137; United States Galvanizing & Plating Equipment Corp. v. Hanson-Van Winkle-Munning Co., 4th Cir., 1939, 104 F.2d 856; Bauer Bros. Co. v. Bogalusa Paper Co., 5th Cir. 1938, 96 F.2d 991.

It follows that the appellee's "Turbo Dye Boarder" can unlawfully infringe the Bailey patent only if it embodies a process of "concurrent" setting and dyeing in a closed chamber under uniform temperature throughout the operative treatments. The trial court has found that Turbo does not embody these definitive and limiting characteristics of the Bailey invention.

The record makes it clear that in the operation of the Turbo apparatus steam is first introduced into a closed treatment chamber containing boarded stockings until a desired temperature is reached. Then a dye solution is sprayed on the stockings. Next a vent in the bottom of the chamber is opened and the stockings are sprayed and rinsed with water. Temperature and pressure within the chamber are greatly lowered during this process. Then, for final setting, the vent is closed and more steam is introduced until the temperature within the chamber is at least twenty degrees hotter than it was during the period of dyeing.

The appellant attempts to avoid the obvious and apparently decisive difference between this two step process and the concurrent operations at even temperature taught by Bailey by arguing that both dyeing and adequate setting occur in Turbo during the first so-called dyeing cycle to produce a commercially acceptable stocking, while the subsequent reheating to a more elevated temperature is an unimportant added step which tends to disguise the essential equivalence of the two methods.

Thus, the critical issue was one of fact, and on that issue there was conflicting testimony. There was testimony that, in the experience of Turbo and others, dyeing at a temperature high enough to give stockings a satisfactory permanent set was unsatisfactory because it did not yield a good color match between the welt portion and the boot portion of the stocking. Conversely, it was testified that the setting achieved at a temperature low enough for satisfactory dyeing was insufficient to make the boarded shape permanent. Therefore, it was desirable to dye and finally set in separate operations characterized by a difference of twenty or thirty degrees between dyeing temperature and final setting temperature. Turbo itself recommended dyeing at from 212 to 220 degrees Fahrenheit and a final setting at about 250 degrees, and its customers usually observed approximately that differential in using the apparatus.

In opposition, the defendant's experts testified that in the Turbo process the recommended dyeing temperature was sufficient to give a satisfactory set and thus produce commercially acceptable stockings.[3] But the trial court was not persuaded by this evidence. We, in turn, are satisfied that on the record it could reasonably be found that the final step of setting at substantially elevated temperature was a significant and important part of the Turbo process which distinguished it in a meaningful way from the Bailey process.

We are also satisfied that the art as taught and practiced before Bailey disclosed the essential features of the method of setting and dyeing employed in the "Turbo Dye Boarder". With this knowledge Turbo had no occasion to employ any new teaching of Bailey in developing

3. Both sides exhibited stockings, purportedly processed through the first stage of Turbo or its equivalent, in an effort to demonstrate whether a commercially acceptable article was thus produced. The district court found these contradictory showings indecisive. We find no justification for disturbing that finding.

or using its apparatus. Indeed, the theory and practice of the Turbo two step process constituted a rejection of Bailey's only new teaching; that satisfactory setting could be achieved concurrently during a period of treatment at even temperature.

The judgment will be affirmed.